**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Legacy Development SC Group, LLC,<br><br>                                  Debtor. | C/A No. 12-06435-dd<br><br>Adv. Pro. No. 14-80082-dd<br><br>Chapter 7 |
| Michelle L. Vieira, as chapter 7 trustee for debtor Legacy Development SC Group, LLC,<br><br>                                  Plaintiff,<br><br>v.<br><br>Richard L Vice and<br>Dinah V. Vice,<br><br>                                Defendants. | **ORDER GRANTING<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT** |

This matter is before the Court on a motion for summary judgment filed by plaintiff Michelle L. Vieira, chapter 7 trustee for debtor Legacy Development SC Group, LLC ("Trustee"), on January 16, 2015, and the response of defendants Richard L. Vice and Dinah V. Vice ("Defendants"). The Court scheduled a hearing on the motion on February 24, 2015, but due to inclement weather continued it to March 24, 2015. After careful consideration of the applicable law, arguments of counsel, and evidence submitted, the Trustee's motion for summary judgment is granted. The Court issues the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a), made applicable by Fed. R. Bankr. P. 7052.[1]

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

1

## I.    FINDINGS OF FACT

The following facts are not in dispute:

1. Legacy Development SC Group, LLC ("Legacy" or "Debtor") is a limited liability company organized and existing under the laws of Florida. Compl. ¶ 1; Answer ¶ 2.

2. Ronald and Beverly LeGrand co-own 53.75% of Legacy. C/A No. 12-06435-dd; Dkt. 12.

3. Legacy and Defendants entered into a real estate purchase agreement on March 26, 2008. Pl.'s Mem. Supp. Mot. Summ. J., Ex. G; Def.'s Obj. Mot. Summ. J., Ex. A.

4. On April 8, 2008, Defendants purchased a parcel of real property from Legacy for $670,000. Compl. ¶ 12; Answer ¶ 7.

5. As part of the transaction, Defendants signed a promissory note ("Note") in favor of Legacy for $170,000. Compl. ¶ 13; Answer ¶ 8.

6. The Note provides for interest accruing at 5% per annum until the maturity date, and 15% thereafter. Pl.'s Mem. Supp. Mot. Summ. J., Ex. A.

7. The Note also provides that if it is "placed in the hands of an attorney for collection or is collected through any legal proceedings, Borrower promises to pay all expenses of collection and reasonable attorney's fees incurred by Lender." *Id*.

8. In November 2008, Defendants received a letter from LeGrand verifying the payoff amount of the Note and advising them of the option to pay off the Note early at a discount. Def.'s Obj. Mot. Summ. J., Ex. B.

9. On October 16, 2012, an involuntary petition under chapter 7 of the Bankruptcy Code was filed against Legacy. C/A No. 12-06435-dd; Dkt. 1. The Court entered the Order for Relief on November 13, 2012, and Michelle Vieira was appointed trustee. *Id*.; Dkt. 7.

10. The Note matured on April 15, 2013. Pl.'s Mem. Supp. Mot. Summ. J., Ex. A. Defendants have not made any payments on the Note. Compl. ¶ 18; Answer ¶ 11.

11. Sometime after it matured, the Trustee provided written notice to Defendants of the default and made a written demand for payment. Compl. ¶ 19; Answer ¶ 12.

12. Defendants have not paid the Note and refuse to pay. Compl. ¶ 20; Answer ¶ 13.

13. On August 8, 2014, the Trustee filed this adversary proceeding to enforce the Note. Dkt. 1.

14. Defendants timely responded, conceding the underlying facts asserted by the Trustee but arguing that the Note is unenforceable due to the circumstances surrounding Defendants' signing of the Note and real estate purchase agreement. Dkt. 5.
In addition, but only for the purpose of summary judgment, the Court presumes the truth of the following facts asserted by the non-moving party and not conceded by the plaintiff:

15. In late 2007, Defendant Ronald Vice attended a seminar conducted by Ronald LeGrand and learned about Legacy's development, Legacy Estates at Barefoot, in North Myrtle Beach, South Carolina. Def.'s Obj. Mot. Summ. J., Aff. Vice ¶¶ 3 - 4.

16. Shortly thereafter, Defendants visited Legacy Estates at Barefoot and met with Kenneth H. Gwynn ("Gwynn"), Legacy's manager. *Id.* ¶¶ 4 - 6.

17. Gywnn provided Defendants with marketing materials for the development and told Defendants that they would be entitled to amenities, including a $75,000 membership to the Dye Country Club at Barefoot, a Salmon Falls trip for two, spa privileges, and concierge services upon purchasing a lot in the development. *Id.* ¶¶ 6, 7.

18. Defendants bought the property with the intention of building a house on it. *Id.* ¶ 16.

3

19. Defendants were told by Gwynn that the portion of the purchase price represented by the Note was "for the purpose of marketing." *Id*. ¶ 10. Gywnn represented that the Note would be enforced only upon sale of the property. *Id*.

20. After Defendants received notification of the payoff option from LeGrand in 2008, Defendants contacted Gwynn, who confirmed that they only need pay the Note if the property was sold. *Id*. ¶ 14.

21. Defendants have never received the promised amenities and the development has not been completed as was represented in the marketing materials. *Id*. ¶ 15.

## II.     Jurisdiction and Authority

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a). Venue is proper under 28 U.S.C. § 1409. Pursuant to 28 U.S.C. § 157(a), the United States District Court for the District of South Carolina has referred the bankruptcy case and this adversary proceeding to this Court. The parties agree that this a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), and (O). While the cause of action is one for breach of contract arising under state law, the parties have consented to the Court entering a final judgment on the motion for summary judgment.

## III.     Summary Judgment Standard

Summary judgment is appropriate when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials … show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c) (made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7056). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return

4

a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The role of the judge in deciding summary judgment is "not himself to weigh the evidence … but to determine whether there is a genuine issue for trial." *Anderson,* at 249.

The party requesting summary judgment must demonstrate the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). This initial burden requires the moving party to identify those portions of the record that it believes demonstrate the absence of a genuine dispute. *Celotex*, 477 U.S. at 323; *see also Anderson*, 477 U.S. at 249. The nonmoving party must then produce "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed R. Civ. P. 56(e). If the nonmoving party fails to provide evidence supporting an essential element of its case, then the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323. The Court must view the facts and draw reasonable inferences in a light most favorable to the non-moving party. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted).

### IV.    Arguments of the Parties

The Trustee argues that the Note, by its terms, is due, along with accrued interest, collection costs, and attorney fees. The Trustee argues that the evidence Defendants seek to present in contesting the enforceability of the Note is barred by the parol evidence rule. Because the parties do not otherwise dispute the validity and written terms of the Note and the real property purchase agreement, the Trustee argues that summary judgment is appropriate.

Defendants concede that extrinsic evidence to a contract is generally barred by the parol evidence rule. However, they argue that extrinsic evidence is admissible here because (1) it is evidence that Defendants were fraudulently induced into entering the contact; and (2) it is evidence of a subsequent agreement that Defendants are not obligated to pay the Note.  Defendants further

5

assert that there exists a question of fact as to whether the Note is enforceable because (1) in the course of negotiating the Note, Legacy breached the covenant of good faith and fair dealing; and (2) the purpose of the Note was to inflate the property values of the other lots, thus the doctrine of *in pari delicto* bars recovery.

## V.    Discussion

Defendants correctly assert that the Trustee as Plaintiff stands in shoes of the Debtor and is subject to any defenses that could be brought against it. *Grayson Consulting Inc. v. Wachovia Securities, LLC (In re Derivium Capital, LLC)*, 716 F.3d 355, 367 (4th Cir. 2013). However, Defendants have not shown a material factual dispute permitting the asserted defenses to survive summary judgment. Admission of the evidence that might create a dispute as to the enforceability of the Note is barred by the parol evidence rule and there is no evidence in the record supporting Defendants' additional defenses. Summary judgment is therefore appropriate in favor of the Trustee.

### A.  Parol Evidence Rule

The Trustee argues that the Note is an enforceable contract and that by refusing to pay the Note Defendants have breached the contract. Defendants do not dispute the existence of a contract that by its written terms is due and owing. Instead, Defendants argue that statements and evidence extrinsic to the contract make the contract unenforceable. "[T]he parol evidence rule is not a rule of evidence at all, rather it is a rule of substantive law founded upon the substantive rights of the parties." Barry Russell, Bankr. Evid. Manual, § 9:1 at 985 (2014 - 15). "When the parole evidence rule is at issue in a bankruptcy proceeding, the bankruptcy court generally must apply the laws of the state in which it sits to resolve the issue." *Id*. at 986; *see also Gilbert v. Scratch 'n Smell, Inc.*, 756 F.2d 320, 322 (4th Cir. 1985). South Carolina law governs this cause of action.

6

Generally, the parol evidence rule bars parties from presenting "extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary, or explain the written instrument." *Gilliland v. Elmwood Props.*, 391 S.E.2d 577, 581 (S.C. 1990). The rule is not absolute. A court may consider parol evidence to explain a contract if the contract contains an ambiguity. *Columbia East Assocs. v. Bi-Lo, Inc.* 386 S.E.2d 259, 261 (S.C. Ct. App. 1989). A court may also consider extrinsic evidence if the evidence demonstrates that the contract was procured "by words and with a fraudulent intent of the party claiming under it." *Allen-Parker Co. v. Lollis*, 185 S.E.2d 739, 742 (S.C. 1971). In addition, parol evidence may be used to show that there was a subsequent agreement or modification to a contract. *Adamson v. Marianne Fabrics, Inc.*, 391 S.E.2d 249, 250 (S.C. 1990). The parties here agree that the Note is unambiguous; the issue is whether representations made by LeGrand and Gywnn fall within the latter two exceptions to the parol evidence rule, thus permitting the Court to consider evidence that might create a material dispute of facts.

a. Fraudulent Inducement Exception

Parol evidence is admissible to show that a contract was procured by words stated with a fraudulent intent. *Frewil, LLC v. Price*, No. 5293, --- S.E.2d ---, 2015 WL 446558, at *3 (S.C. Ct. App. 2015). To be actionable, these misrepresentations must reference a pre-existing fact. *Hansen v. DHL Laboratories, Inc.*, 450 S.E.2d 624, 626 (S.C. Ct. App. 1994) *aff'd* 459 S.E.2d 850 (S.C. 1995) (per curiam). Unfulfilled promises and statements about future events are not fraudulent. *Moye v. Wilson Motors, Inc.*, 176 S.E.2d 147, 152 (S.C. 1970); *U. S. Leasing Corp. v. Janicare, Inc.*, 364 S.E.2d 202, 205 (S.C. Ct. App. 1988). This is true even if the promise rises to the level of a contract, as a mere breach of contract is not fraudulent. *Davis v. Upton,* 157 S.E.2d 567, 569

7

(S.C. 1967). Instead, for a court to find there was fraud, there must be some evidence that the promisor had no intention of keeping the promise at the time it was made. *Hansen*, 450 S.E.2d at 626.

When a court is considering the enforceability of a promissory note, parol evidence is generally barred when its admission would show that the holder of the note promised the maker at the time the note was signed that he or she would not be liable on the note. For example, in *Hansen*, the CEO of DHL Laboratories, Inc. signed four promissory notes that were allegedly disguised compensation agreements. *Hansen*, 314 S.E.2d at 630. Hansen stated that the reason the compensation was structured as a loan was to avoid tax liability, and that he was induced into signing the notes by the promise that he would not need to repay them. *Id*. at 626. The court rejected Hansen's argument that this inducement was fraudulent. *Id*. at 627. Instead, the court noted that there was every indication that DHL intended to keep that promise at the time it was made. *Id*. In now trying to collect the notes, DHL was breaking its promise. *Id*. That is not a fraud because "a breach of a promise alone does not constitute fraud." *Id*. Here, even if Debtor's agents made the statements that Defendants would not be required to pay the Note, which the Court presumes for the purposes of summary judgment to have been made, there is no evidence that Legacy did not intend to honor the statements at that time.

South Carolina case law provides an additional example of how courts consider unwritten promises made in connection with promissory notes in *Ray v. S.C. Nat'l Bank, Inc.*, 314 S.E.2d 359 (S.C. Ct. App. 1984). There, the defendants signed promissory notes to obtain funding for a third party to finance construction contracts. *Ray*, 314 S.E.2d at 360. The defendants alleged that they were induced by the bank to sign the notes based on the bank's oral promise that it would monitor the construction contracts, seek repayment from the proceeds of those contracts, and notify

8

the defendants if any payment problems developed. *Id*. The court rejected the argument that these statements were admissible as evidence of fraud. *Id*. at 361. Instead, the court noted the rule that "a written contract is binding as against a claimed contemporaneous oral agreement which would modify or vary it." *Id*. The statements were merely evidence of an agreement contradicting the unambiguous notes; their admission was thus barred by the parol evidence rule. *Id*. Defendants here would similarly have the Court consider evidence of an agreement contemporaneous to the Note that disputes the plain terms of the Note.

In the cited cases, the alleged misrepresentation was a promise of future action or a promise to refrain from future action and thus not evidence of fraud. The parol evidence rule permits admission of extrinsic evidence under the fraud exception only when that evidence shows one party misrepresented a current fact. For example, in *Frewil*, the South Carolina Court of Appeals held that the parol evidence rule did not bar extrinsic evidence when the evidence was statements made by a realtor to potential tenants regarding a rental property prior to the tenants' signing of the lease. 2015 WL 446558 at*3. The realtor's representations concerned the appliances existing in the apartment at the time it was rented. *Id*. Because the evidence was a representation of a fact that existed at the time the contract was signed, the parol evidence rule was not applicable. *Id*.; *see also Reid v. Harbison Development Corp.*, 330 S.E.2d 532, 534 – 35 (S.C. Ct. App. 1985) (considering evidence regarding what the buyers were told their homeowners' association obligations would be in contrast to the sales contract and public records associated with the homeowners association, and concluding that a question of fact existed as to whether the misrepresentation fraudulently induced the buyers into signing the sales contract).

The facts in this case do not support Defendants' argument that they were fraudulently induced into signing the Note. For the purposes of summary judgment, the Court presumes the

9

truth of the facts Defendants contend. Defendants assert in their pleadings, and reiterated at the hearing, that Legacy promised the Note would not be enforced unless there was a sale of the property. In collecting the Note, the Trustee, as successor to Legacy, is now breaking that promise. The cases above demonstrate that a broken promise standing alone is not fraud. There must be an intention not to keep the promise at the time it was made. Defendants have presented no evidence that Legacy did not intend to keep its alleged promise. Because there is no evidence this was the case, there is no evidence the statements were fraudulent.

The other evidence Defendants seek to admit to support their fraudulent inducement defense is similarly not evidence of fraud. This evidence consists of marketing materials, representations about promised amenities, and representations about the future of the development. These are not representations as to facts that existed at the time the Defendants signed the Note. They are "merely statements promissory in nature at the time they were made and related to future actions or conduct." *Janicare*, 364 S.E.2d at 205. As such, they also are not evidence of fraud. *Id*.

The purpose of the parol evidence rule is to bar the admission of evidence contradicting the terms of a written contract. That is precisely what Defendants are attempting to do here. They signed the Note obligating them to pay the debt. Consideration of evidence contradicting that obligation is barred by the parol evidence rule. Promises made that are later broken are not evidence of fraud. Promises of future conduct are also not evidence of fraud. This extrinsic evidence is not admissible under the fraudulent inducement exception and does not defeat summary judgment.

    b. <u>Subsequent Agreement Exception</u>

In addition to arguing that the Note is unenforceable due to fraud, Defendants argue that Gywnn made a later representation to them that they would not need to pay the Note; that this

10

representation is admissible as a subsequent modification to the contract; and that this subsequent modification bars collection of the Note. Defendants misapprehend the scope of the subsequent agreement exception.

The parol evidence rule does not bar evidence of subsequent agreements. *Adamson*, 391 S.E.2d at 250. South Carolina law permits oral modifications of contracts, and these oral modifications can be evidence of a subsequent agreement or modification. *King v. PYA/Monarch, Inc.*, 453 S.E.2d 885, 889 (S.C. 1995). However, to determine that there is a subsequent agreement, a party must provide evidence supporting the necessary elements of a contract: offer, acceptance, and consideration. *Sauner v. Pub. Serv. Auth. of S.C.*, 581 S.E.2d 161, 166 (S.C. 2003). Defendants' evidence fails to support any of the three elements.

First, there is no evidence of an offer and acceptance. Defendants state that they and Legacy agreed the Note would not be collected absent a sale, and that this promise was made contemporaneous with the signing of the Note. A follow-up conversation between Defendants and Gywnn confirming Defendants' understanding of the Note repayment terms is not a subsequent agreement. There was no new offer and acceptance. Instead, by Defendants' own explanation, the conversation reaffirmed the earlier understanding.

Second, Defendants have provided no proof of consideration. At the summary judgment hearing, Defendants stated that they provided consideration by foregoing suing Legacy at the time they received the payoff letter. Although the forbearance of legal action can be consideration, Restatement (Second) of Contracts § 73 (1981), Defendants have not provided the Court with any evidence supporting the assertion that they provided this or any other form of consideration. It is Defendants' burden to put forth specific facts supporting their case to defeat summary judgment. They have put forth no such facts supporting consideration other than one self-serving statement.

11

The evidence before the Court is that Defendants allege they were never required to pay the Note and later confirmed this agreement with Gywnn. While this statement may be a statement subsequent to the contract, it is not a subsequent agreement with an offer and acceptance. Even if the Court were to construe it as such, the statement alone does not modify contract because there is no demonstration of consideration.

### B. Justifiable Reliance

The Trustee additionally argues that Defendants cannot defeat summary judgment because they have not introduced evidence supporting their claim of fraud. Specifically, the Trustee argues that the non-reliance clause in the real estate agreement bars the Court as a matter of law from concluding that Defendants had a right to rely on any oral representations from Legacy and Gwynn. The Court agrees.

In South Carolina, fraud is defined as "an intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing … or surrender a legal right." *Regions Bank v. Schmauch*, 582 S.E.2d 432, 444 (S.C. Ct. App. 2003) (citation omitted). The crux of a fraud claim is whether a party justifiably relied on the representation it claims is fraudulent. *See Hovis v. General Dynamics Corp. et al.*, 396 B.R. 895, 910 (D.S.C. 2007) (considering fraud under New York law, and noting the result would be the same under South Carolina law). When a clause in a contract expressly negates reliance, then the party asserting fraud generally cannot succeed on its claims. *Hovis*, 396 B.R. at 910. However, the non-reliance clause must be specific and clearly marked in the contract. *Id.* at 914. In addition, if the evidence surrounding contract formation shows there was a misrepresentation, then a reliance clause alone is insufficient to resolve a question of fact as to its reasonableness. *Frewil*, 2015 WL 446558, at *2; *Slack v. James¸* 614 S.E.2d 636, 640 (S.C. 2005). This is because "[a] party should not be given the opportunity to

free himself from an allegation of fraud by incorporating a generalized non-reliance clause into a contract." *Slack*, 614 S.E.2d at 641.

Thus, for example, in *Slack*, the alleged reliance clause was insufficient to keep the court from considering additional facts regarding whether reliance on a misrepresentation was reasonable. *Id.* at 640. The clause was one sentence in the contract using the phrase "relied upon" in a paragraph entitled "Entire Agreement." *Id*. The court held that this was not a reliance clause because it was not specific and did not stand alone in its own section in the contract. *Id*. at 641. It therefore did not preclude the buyer from arguing there were fraudulent misrepresentations made in connection with the contract. *Id*. In contrast, in *Hovis*, the court held that the reliance clause did bar the court from considering other evidence when the contract contained multiple sections asserting non-reliance, such as a section disclaiming warranties, an acknowledgement that there were no implied warranties, and a clause stating that the parties were only entitled to rely on the representations in the agreement. *Hovis*, 396 B.R. at 914 – 15. The specificity and clarity of this language precluded the defendants from arguing that their reliance on any conflicting representations from the plaintiffs was reasonable. *Id*. at 915.

The non-reliance clause in the real estate sales agreement bars Defendants from prevailing on the reliance prong of their fraud argument. The relevant provision in the agreement is at paragraph 10.7, entitled "Purchaser's Acknowledgment"

> You understand that any salesman representing us in this transaction does not have the authority to make any statements in conflict with or in addition to the information contained in the Agreement, and any other documents received from us and/or any real estate agent or broker, including without limitation, any representation made regarding the investment, rental or resale potential of the Lot, and we, for ourselves and any agent or broker speaking in our behalf, specifically disclaim any responsibility for such statements. Further, if any such statements were made, you acknowledge that you may avoid any and all obligations by you hereunder simply by not executing this Agreement. By execution of this Agreement, you affirm that you have not relied upon any such statements, if any,

13

and waive any rights that you might have as a result of such statements unless they are incorporated into this Agreement.

This section states that Defendants are not to rely on any representations that are not in the written contract. It specifically states that Defendants should not rely upon any representations regarding the resale or investment potential of the property, statements contrary to the agreement, and statements not incorporated into the agreement. Like the clauses in *Hovis*, it uses the phrase "relied upon" and stands alone in the contract. There is no evidence that would lead the Court to conclude the clause was inserted to protect a party to the contract from a fraud claim. The Court therefore finds that the real estate agreement contains a valid reliance clause precluding Defendants from arguing that they justifiably relied on representations outside the Note and real estate agreement. Because they cannot prove reliance, their fraud claim must fail.[2]

### C. Remaining Defenses

Finally, Defendants assert two non-contractual defenses: *in pari delicto* and a violation of the implied covenant of good faith and fair dealing. Defendants have put forth no facts supporting either defense.

The equitable doctrine of *in pari delicto* is an affirmative defense that generally bars suits by plaintiffs when the plaintiff was equally culpable for the alleged wrongs committed by the defendant. *Grayson Consulting,* 716 F.3d at 367. The purpose of the defense is twofold: first, it ensures that courts do not waste their judicial resources on disputes between wrongdoers; second, it deters illegality by denying admitted wrongdoers access to courts. *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985). To find the defense applicable, a court must

---

[2] Defendants assert that the evidence supporting the alleged fraudulent conduct of the parties also supports barring the Trustee from collecting the Note based on the equitable doctrine of unclean hands. The doctrine of unclean hands bars a party from receiving relief if the party has engaged in wrongful, illegal, or unethical acts. *In re Lafferty*, 469 B.R. 235, 245 – 46 (Banks. D.S.C. 2012). As discussed *supra*, the Court finds no evidence of fraud; thus, based on this evidence, the doctrine of unclean hands is inapplicable.

14

first find that there was evidence of a conspiracy between the plaintiff and defendant to commit a wrong. *See Logan v. JKV Real Estate Servs. et al. (In re Bogdan)*, 414 F.3d 507, 514 (4th Cir. 2005).

Defendants argue that the defense is applicable here because Legacy sought their signatures on the Note to inflate the purchase price of the lot. However, the evidence presented by Defendants is that they bought the lot with the intention to build on it. This evidence contradicts their assertion that they were participating in a scheme to fraudulently inflate land values: they had no intention to resell the land. There is no other evidence before the Court supporting Defendants' alleged participation in the alleged conspiracy. Absent evidence of wrongdoing, the *in pari delicto* defense is inapplicable.[3]

Lastly, Defendants argue that enforcement of the Note violates the implied covenant of good faith and fair dealing. They cite *Adams v. G.J. Creel and Sons, Inc.*, 465 S.E.2d 84 (S.C. 1995), in support of their argument. In *Adams*, the defendant assigned a service station franchise contract without the consent of the plaintiff who was party to the franchise agreement. *Adams*, 465 S.E.2d at 85. The franchise agreement clearly provided that it was not assignable by the defendant without the plaintiff's consent. *Id*. When the plaintiff sued for breach of contract, defendant counterclaimed that the plaintiff breached the contract by failing to sell gasoline at an agreed-upon price, and that this was a breach of the implied covenant of good faith and fair dealing. *Id*. After reviewing the evidence, the court found that because the plaintiff was acting within the parameters of the agreed-upon contract, there was no breach. *Id*.

---

[3] Defendants similarly assert that the facts supporting its *in pari delicto* defense support its unclean hands defense. As the Court finds no facts supporting the *in pari delicto* defense, it also finds none supporting the unclean hands defense.

15

Here Defendants signed a Note promising to pay a debt. The evidence Defendants want to offer contradicting the promise is either barred by the parol evidence rule or does not otherwise support their contention that the Note is unenforceable. There is no breach of an implied covenant of good faith and fair dealing "where a party to a contract has done what provisions of the contract expressly gave him the right to do." *Adams*, 465 S.E.2d at 85. Collection of the Note is therefore permissible under its terms.

### VI.    Conclusion

There are no admissible material disputed facts. Defendants have not put forth evidence supporting their additional defenses. The Note is enforceable. The Court will hold a further hearing on April 21 at 9:00 am at 145 King Street, Room 225 in Charleston, South Carolina to receive proof of the amount of principal and interest accrued on the Note together with the costs of collection.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**04/06/2015**



David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 04/06/2015